**WESTERN CAPITAL DESIGN, LLC, Plaintiff,**

v.

**NEW YORK MERCANTILE EXCHANGE, et al., Defendant.**

**No. 99 CIV. 4046(AKH).**

United States District Court, S.D. New York.

Feb. 16, 2001.

439

Douglas J. Kramer, Baden Kramer Hoffman & Brodsky, P.C. and Marc S. Koplik, New York City, for plaintiff.

Martin I. Kaminsky, Edward T. McDermott and Hans Kobelt, Pollack & Kaminsky, New York City, for defendant.

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

HELLERSTEIN, District Judge.

This is a complaint for damages under the Commodity Exchange Act and state law. Plaintiff sues the New York Mercantile Exchange and fifty unnamed defendants. Defendant NYMEX has moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated below, the motion to dismiss is granted.

### Facts

Plaintiff is a trader of options contracts on the New York Mercantile Exchange, ("NYMEX"). Plaintiff trades, as others do, through floor brokers, who are members, but not employees, of NYMEX. NYMEX is the world's largest commodity exchange for the trading of futures contracts and options contracts in energy products, metals, and other commodities. Commodities futures contracts are instruments that allow parties to agree to buy and sell a particular commodity at a future date. NYMEX provides facilities as well as an organizational structure for the trading of commodities futures contracts. All terms of the contract, excepting price, are set by the exchange. As a contract market, its activities are regulated by the Commodity Futures Trading Commission ("CFTC"), pursuant to the Commodity Exchange Act, ("CEA"), 7 U.S.C. § 1, et seq.

The Second Amended Complaint alleges that NYMEX, through its failure in bad faith to enforce its Floor Rules prohibiting improper trading conduct and its affirmative allowance of outside trading (described below), violated the Commodity Exchange Act, 7 U.S.C. § 25, and is liable to plaintiff for the damage that plaintiff allegedly incurred. Specifically, the complaint alleges that plaintiff was required to pay floor brokers for transactions in heating oil options contracts and natural gas options contracts, "at premiums outside the current market price that differ so far from a consistent pricing model and from other option orders executed contemporaneously by NYMEX option floor brokers as to be explainable only by a pattern of fraud by the NYMEX option floor brokers." Complaint at ¶ 35.

The complaint refers to these transactions as "outside contracts," and alleges that NYMEX, by failing to disallow them, violated NYMEX Floor Rule 6.06(A), which states, in pertinent part

Transactions made on the Exchange trading floor at a price above that at which such futures or options contract is bid, are not made at the current market price for such futures or options contracts and shall be disallowed by any floor official designated by the President or by any member of the Floor Committee. If so disallowed, such transactions shall not be reported or recorded by the Exchange.

Complaint at ¶ 34. The Complaint alleges that NYMEX fraudulently misled the public by representing that it enforces its rules and regulations that it causes to be distributed to the public, and accordingly offers a safe, fair and orderly market protected by rigorous financial standards and surveillance procedures, while all the while tolerating trading of these Rule-violative outside contracts. Complaint at ¶ 66–71.

The complaint states four claims for relief: a claim alleging violations of the Commodity Exchange Act, a claim of common law fraud, a claim concerning the breach of

the broker's duty of best execution, and a claim for breach of fiduciary duty. NYMEX moved to dismiss the first count of the complaint on the grounds that the complaint failed adequately to plead bad faith, as required in an action filed under the Commodity Exchange Act. NYMEX also moved to dismiss counts two through four of the complaint on the grounds of preemption, failure to plead fraud with specificity, and lack of a fiduciary relationship between the parties.

## Discussion

The first cause of action is brought under the Commodity Exchange Act, 7 U.S.C. § 1, *et seq.* Section 22(b)(1)(A) of the CEA states, in pertinent part:

> "[A] contract market [such as NYMEX] ... that fails to enforce any by-law, rule, regulation or resolution that it is required to enforce by Section 5a(8) and 5a(9) [7 U.S.C. § 7a(8) and 7a(9) ] ... of this Act ... shall be liable for actual damages sustained by a person who engaged in any transaction on or subject to the rules of such contract market ... to the extent of such person's actual losses that resulted from such transaction and were caused by such failure to enforce ... such bylaws, rules, regulations or resolutions."

7 U.S.C. § 25(b)(1).

██ Bad faith is a necessary element to sustain a private right of action against an exchange under the CEA. *See* 7 U.S.C. § 25(b)(4) (a victim must establish that the contract market "acted in bad faith in failing to take action or in taking such action as was taken" which supposedly caused the loss for which the plaintiff is suing.) This requirement is strictly applied. *See, e.g., Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 780 (2d Cir.1984) ("[T]he failure of an Exchange to enforce its rules may provide

a cause of action. To avoid dismissal, however, a complaint must adequately plead bad faith on the part of the Exchange. Moreover, we have recently made it clear that the bad faith requirement governs claims of both Exchange action and inaction. [Citation omitted]").

The conduct complained of in this case implicates the Exchange's performance of its statutory duty to maintain a fair and orderly market. An adequately pleaded charge of bad faith is essential. *Apex Oil Co. v. DiMauro,* 641 F.Supp. 1246, 1282 (S.D.N.Y.1986) (Walker, J.) (*quoting P.J. Taggares Co. v. New York Mercantile Exchange,* 476 F.Supp. 72, 78 (S.D.N.Y.1979) (Weinfeld, J.)).

██ Bad faith requires wrongful knowledge, and failure to act on that knowledge with a motive ascribable to malfeasance. "[S]elf-interest or other ulterior motive unrelated to proper regulatory concerns must constitute the sole or dominant reason for the exchange action or inaction." *Minpeco, S.A. v. Hunt,* 693 F.Supp. 58, 61 (S.D.N.Y.1988) (citation omitted). "[T]o succeed on a claim of bad faith, plaintiffs must establish 'first, that the exchange acted or failed to act with knowledge [ ] and second, that the exchange's action or inaction was the result of an ulterior motive.'" *Id.* (*quoting Ryder Energy,* 748 F.2d at 780). Although irrational or arbitrary behavior in some circumstances may support an inference of bad faith, the behavior has to be "so arbitrary" as to justify an inference of "constructive bad faith." *See Minpeco,* 693 F.Supp. at 63; *see also Brawer v. Options Clearing Corp.,* 807 F.2d 297, 303 n. 9 (2d Cir.1986) ("We do not mean to foreclose the possibility that [exchange actions] might be so arbitrary as to constitute constructive bad faith."), *cert. denied,* 484 U.S. 819, 108 S.Ct. 76, 98 L.Ed.2d 39 (1987); *Jordon v. New York Mercantile Exchange,* 571

F.Supp. 1530, 1553 (S.D.N.Y.1983), *affirmed in relevant part, Sam Wong,* 735 F.2d 653 (2nd Cir.1984).

The second amended complaint alleges that NYMEX was aware, through its monitoring activities, of the alleged violations of its floor rule that prohibits outside trading. The complaint then alleges that NYMEX advertised its rules and its active enforcement to induce the public to trade, even though it knew that it was doing nothing to prevent outside trading.2d Am. Compl., ¶¶ 65–76. As motive, plaintiff alleges

> that the officers and governing board members ultimately charged with enforcement of the applicable Floor Rules are or may be among the Doe Defendants and thus do not wish to enforce prohibitions that would limit their ability to conduct outside trades.

Complaint ¶ 75. Thus, plaintiff alleges improper motive, that is, bad faith, on the part of the Exchange on the basis of speculative allegations. That is not sufficient to satisfy the special pleading rule of *Ryder Energy.*

■ Plaintiff, arguing for legal sufficiency, claims that it has alleged gross indifference to enforcing its floor rules governing outside trading, and that there can be only two possible explanations: an indifference to its duties to regulate its own activities and those of its members constituting a bad faith abuse of the discretion given to NYMEX by the CEA, *see* complaint ¶ 74; or self interest, as reflected in the speculative allegations of paragraph 75 of the complaint.

■ However, there is a third explanation suggested by plaintiff's factual allegations, and that is negligent inattention. Plaintiff's allegation of indifferent monitoring is mere hyperbole—an effort to substitute rhetoric for the obligation to plead

bad faith by specific facts. No specific facts have been pleaded to support the claim that NYMEX acted out of "self-interest or other motive unrelated to proper regulatory concerns" in its enforcement activities. *See Sam Wong & Son, Inc. v. New York Mercantile Exchange,* 735 F.2d 653, 677 (2nd Cir.1984). Negligence does not constitute bad faith. *Brawer,* 807 F.2d at 302.

Plaintiff alleges that unnamed officers or directors of NYMEX failed to prevent outside trades due to a bad-faith desire to profit from them as floor traders.2d Am. Compl. ¶ 75. But officers cannot be traders. *See* Floor Rules 2.00(c), 2.20 and 6.31A. And there is no allegation that such unnamed, and presumably unknown, officers controlled NYMEX or influenced its conduct. The allegation is pure speculation, insufficient to satisfy the rule of pleading bad faith by specific facts. *Ryder Energy, supra;* M.C. Silberberg, *Civil Practice in the Southern District of New York* § 6.09 at 6–20–22 (2d ed. (1999)).

Accordingly, the motion to dismiss Count one of the Second Amended Complaint is granted. Since plaintiff has previously amended and does not appear to have the ability to plead a legally sufficient claim, Count one is dismissed with prejudice.

■ Defendant NYMEX' motion to dismiss also addresses the inadequacy of the remaining counts. As to count two, common law fraud, plaintiff alleges that "by concealing and failing to disclose that not all market trades would be executed in accordance with its Floor Rules, ... [NYMEX] committed fraud in violation of the common law of New York." 2d Am. Compl. ¶ 81. Defendant NYMEX moves to dismiss, arguing that plaintiff has failed sufficiently to allege the requisite mental state (*scienter*) to sustain an allegation of fraud and that the state law claim is preempted.

The failure to plead specifically noted for Count one applies as well to the *scienter* requirement of Count two. It, too, must be dismissed. But it is also pre-empted by federal law.

The Commodity Exchange Act itself does not contain an express statement of preemption. *See* 7 U.S.C. § 1, *et seq.* Defendant argues that since Congress intended to supply a uniform set of regulations for the commodities markets, allowing a state law claim of fraud to proceed, on a theory that an Exchange failed in its duties to enforce its rules as required under the CEA, would frustrate this intent. Plaintiff counters by arguing that its claim does not concern the manner in which the Exchange conducts its business. Rather, plaintiff maintains, count two rests on an allegation that NYMEX affirmatively misrepresented itself to the public, and was indifferent to its representations, thus committing fraud. The plaintiff argues that curing this harm would not require the Court even to consider the rules concerning commodity market regulation as mandated by the CEA.

■ The parties appear to agree that a claim under state law that implicates NYMEX's duties to self-police and regulate as required under the Commodity Exchange Act is pre-empted. A claim that lies not on separate and distinct duties established under the common law, but rather in an Exchange's representations about its federal statutory duties, is not a separate and distinct claim. *See American Agric. Movement, Inc. v. Board of Trade,* 977 F.2d 1147, 1154–57 (7th Cir.1992) (ruling that the Commodity Exchange Act preempts state law claims that "bear [ ] upon the actual operation of the commodity futures markets"), *cited with approval in Barbara v. New York Stock Exchange, Inc.,* 99 F.3d 49, 59 (2d Cir.1996). Accord-ingly, the motion to dismiss count two of the complaint is granted.

■ NYMEX also moves to dismiss count three, breach of the broker's duty of best execution, and count four, breach of fiduciary duty, on the grounds that these claims are directed towards the relationship of the plaintiff to his broker or brokers, and not to NYMEX. I agree. Count three states clearly that it is directed to a broker's duty, not an Exchange's duty, and count four is based on the fiduciary relationship that exists between a broker and his client, not between a market and a trader. The plaintiff appears to agree as well, for these issues were not briefed in its opposition papers. Accordingly, counts three and four of the complaint are dismissed against NYMEX.

■ For the reasons discussed above, Defendant NYMEX's motion to dismiss is granted. Accordingly, the Second Amended Complaint is dismissed as against NYMEX, and the Clerk may enter judgment in its favor. Plaintiff has named no other defendant, and the Second Amended Complaint may not stand against only unnamed, unserved defendants. When only unserved defendants remain in a case, a court may enter final judgment "since there is no basis for believing there will be any further adjudications in the action, or ... for holding the dismissals subject to revision." *Leonhard v. United States,* 633 F.2d 599, 608 (2d Cir.1980). Accordingly, the Second Amended Complaint is dismissed entirely, without leave to re-plead.

The Clerk shall mark the case as Closed.

SO ORDERED.